**[Cite as *Speigel v. Ianni*, 2023-Ohio-3809.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JAMIE L. SPEIGEL, | : | APPEAL NOS. C-220467 |
| | | C-230012 |
| Plaintiff-Appellant, | : | C-230036 |
| | | TRIAL NOS. A-2102982 |
| | : | A-2103468 |
| vs. | | A-2103981 |
| | : | |
| | : | |
| PETER B. IANNI, | | *O P I N I O N.* |
| | : | |
| Defendant-Appellee, | : | |
| and | | |
| | : | |
| MOXIE    PROACTIVE    SOLUTIONS LLC, | : | |
| Defendant. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: October 20, 2023

*Paul Croushore*, for Plaintiff-Appellant,

*Thompson Hine LLP, George B. Musekamp* and *Benjamin G. Sandlin,* for Defendant-Appellee.

**CROUSE, Presiding Judge.**

{¶1} Following an acrimonious end to their relationship, plaintiff-appellant Jamie Speigel and defendant-appellee Peter Ianni engaged in extensive litigation in both Hamilton and Clermont Counties concerning how to divide their business and personal assets. Speigel originally filed a complaint against Ianni and defendant Moxie Proactive Solutions, LLC, ("Moxie") in Hamilton County. She then dismissed the complaint and filed a substantially similar complaint in Clermont County. The Clermont County trial court granted Ianni's motion to transfer venue of Speigel's complaint to Hamilton County. The Hamilton County trial court found that it was frivolous conduct for Speigel to have filed the complaint in Clermont County and awarded attorneys' fees to Ianni for the frivolous conduct and for fees he incurred in litigating the transfer-of-venue motion. The Hamilton County court also granted Ianni's motion for judgment on the pleadings on two of the claims asserted in Speigel's complaint, and it dismissed on the merits and with prejudice Speigel's remaining claims for failure to prosecute.

{¶2} Speigel appeals from both the trial court's entry granting Ianni's motion for attorneys' fees and its entry granting Ianni's motion for judgment on the pleadings and dismissing her remaining claims. In three assignments of error, she challenges the Clermont County trial court's transfer of venue, the Hamilton County trial court's award of attorneys' fees, and the Hamilton County trial court's dismissal of her claims. We find Speigel's assignments of error to be without merit and affirm the trial courts' judgments.

### I. Factual and Procedural Background

{¶3}    On August 24, 2021, Speigel filed suit against Ianni in the Hamilton County Court of Common Pleas in the case numbered A-2102982. Also named as defendants were Moxie and David Andriot, Ianni's former brother-in-law.

{¶4}    The complaint alleged that Speigel and Ianni were romantically involved for many years and became engaged in 2016, before their relationship ended in 2021. It further asserted that in 2017, Speigel and Ianni entered into a handwritten contract, executed in the presence of a notary, in which they agreed to become equal owners of Moxie, a staffing management company. Per the allegations in the complaint, prior to the execution of the contract, Speigel was the sole owner of Moxie's predecessor in interest, Moxie Curve LLC. After executing the contract, Speigel and Ianni filed articles of organization for Moxie with the Ohio secretary of state.

{¶5}    According to the complaint, in return for her membership interest in the now jointly-owned Moxie, Speigel contributed $750,000. A portion of these funds went directly to Moxie, and a portion was transferred to Ianni. Speigel also conveyed to Ianni her 2013 Porsche Boxster and the real property that she owned at 4780 Pewter Road, which was located in Clermont County. The complaint alleged that Ianni contributed no capital in return for his 50 percent interest in Moxie.

{¶6}    The complaint further alleged that the contract executed by Speigel and Ianni addressed a potential break up between the parties, providing that upon an end to their relationship, Speigel was entitled to remain in the Pewter residence and that Ianni must either quitclaim the Pewter property and vehicle back to Speigel or repay her the agreed value of those assets. Speigel was also entitled to a return of her cash

contribution to Moxie. The contract additionally stated that if Ianni were caught cheating on Speigel, he had to pay her $500,000 and forfeit all assets.

{¶7} As asserted in the complaint, the contract set forth the parties' roles and rights with respect to Moxie, including identifying Speigel as the business's CEO and Ianni as its President and specifying how profits would be divided. The contract also provided that any after-acquired house, car, land, or possession, regardless of the name on the deed, would be equally owned between them. And it further stated that Ianni could not sell any real estate without Speigel's consent or for less than fair-market value.

{¶8} The complaint alleged that Ianni, around the time that the contract was executed, issued a promissory note to Speigel in which he agreed to assume all payment obligations for the Pewter property and to split the profits with her if the property were sold.

{¶9} The complaint further alleged that in 2019, the parties used Moxie proceeds to purchase vacant land located at 7 Voorhees Drive and the property located at 8875 Fawnmeadow Lane. Both were titled solely in Ianni's name. After these purchases, the parties leased the Pewter property and resided together in the Fawnmeadow property until their breakup in 2021 when Ianni moved out after allegedly cheating on Speigel. According to the complaint, other than making a 2021 profit distribution from Moxie, which was divided equally between the parties, Ianni has not honored his obligations under the contract and has used Moxie funds for personal purchases and to pay for personal expenses. The complaint alleged that Ianni has, for all practical purposes, cut off Speigel from involvement with Moxie. It also alleged that he moved his former brother-in-law, defendant Andriot, into the

4

Fawnmeadow residence to harass Speigel and drive her out of the home and he threatened to evict Speigel from the residence.

{¶10} The complaint contained claims for breach of fiduciary duty, breach of contract regarding the contract's operating-agreement provisions, breach of contract regarding the contract's real-estate provisions, breach of promissory note, breach of trust, unjust enrichment, and a derivative claim on behalf of Moxie for misappropriation of corporate assets and corporate waste. It also contained claims seeking a declaratory judgment, a full and complete accounting, and injunctive relief. The contract and promissory note were filed along with the complaint.

{¶11} Speigel also filed a motion for a preliminary injunction and temporary restraining order asking the court to prohibit any third-party occupants from occupying the property, allow her access to Moxie's computers, records, and accounts, and prohibit Ianni from restricting her access to Moxie.

{¶12} On August 27, 2021, the trial court issued an entry ordering Andriot to vacate the property and stating that "there's nothing in the business records to indicate that Ms. Speigel is a 50-percent owner in Moxie Dealership Solutions. She is listed nowhere on the Secretary of State's website and she has never received a K-1. Therefore, no order will be issued as to her entitlement to inspect the books and records of the business at this time."

{¶13} At a case-management conference on September 29, 2021, the trial court stated its opinion that many of the provisions in the alleged contract did not make sense and did not pass contract law. The court scheduled a hearing on pending issues for October 15, but that hearing never occurred because Speigel filed a Civ.R. 41(A) notice of dismissal on October 1, 2021.

**{¶14}** On the same date that she dismissed the case numbered A-2102982 in Hamilton County, Speigel filed a complaint in the Clermont County Court of Common Pleas against Ianni and Moxie Proactive Solutions. This complaint was substantially the same as the complaint previously filed and dismissed in Hamilton County, with a few notable differences. Andriot was not named as a defendant, and no claim for injunctive relief was asserted. Additionally, as relevant to this appeal, the complaint alleged that the contract between Speigel and Ianni was executed in Clermont County.

**{¶15}** Ianni filed a motion to transfer venue from Clermont County to Hamilton County pursuant to Civ.R. 3(D) and 12(B)(3). The motion alleged that Hamilton County was the proper venue because the contract was allegedly breached in Hamilton County, both parties reside in Hamilton County, the Voorhees and Fawnmeadow properties are both in Hamilton County, and Moxie is located in Hamilton County. The motion contended that the action's only connection to Clermont County was the Pewter property, which was owned solely by Ianni, and that Speigel was forum shopping by filing in Clermont County.

**{¶16}** Speigel opposed Ianni's motion, arguing that she had the right to dismiss the Hamilton County complaint and refile in Clermont County. She contended that Clermont County was an appropriate venue because both the contract and the note were negotiated and executed in Clermont County, and because the Pewter property, where the parties resided at the time the contract was executed and which was the subject of her declaratory-judgment claim, was in Clermont County.

**{¶17}** The Clermont County trial court granted Ianni's motion for a change of venue. The corresponding entry noted that a hearing was pending in Hamilton County at the time that the complaint was dismissed. It additionally noted that the Clermont

6

County case was filed on October 1, 2021, approximately 20 minutes before the Hamilton County dismissal was officially docketed, and that pursuant to the "jurisdictional-priority rule," the Hamilton County court had acquired exclusive jurisdiction to determine the whole issue and settle the rights of the parties. The court found that Speigel's conduct constituted "abject forum shopping," and stated that in these circumstances, where a previously filed and dismissed case is refiled, the case shall be reassigned to the judge originally assigned. It made no findings as to which county was the appropriate venue. Upon transfer to Hamilton County, Speigel's complaint was assigned the case number A-2103981, and it was returned to the same trial judge that was assigned the initial complaint in the case numbered A-2102982.

{¶18} In the period between Speigel's filing of the complaint in Clermont County and the transfer of venue back to Hamilton County, Ianni filed the case numbered A-2103468 against Speigel in Hamilton County. This case was assigned to a different trial judge than the action filed by Speigel. Ianni's amended complaint, filed October 12, 2021, asserted that he was the sole owner of the Fawnmeadow and Vorhees properties, that Speigel refused to leave the Fawnmeadow property after her relationship with Ianni ended, that she caused property damage while remaining on the property as a trespasser, and that despite having no ownership interest in either property, Speigel recorded "Affidavits of Fact" asserting an undivided one-half ownership interest in both properties. The complaint asserted claims for trespass with respect to the Fawnmeadow property, slander of title, quiet title, forcible entry and detainer, and ejectment.

{¶19} Ianni additionally filed a motion for a temporary restraining order and preliminary and permanent injunctions seeking to enjoin Speigel's continued trespass

7

on the Fawnmeadow property and to uncloud the title on the Fawnmeadow property that was caused by Speigel's "Affidavit of Fact." He also filed a motion for forcible entry and detainer and ejectment asking the court to issue a writ of restitution in his favor and to eject Speigel from the Fawnmeadow property. On November 5, 2021, the trial court issued an order granting Ianni's motion for forcible entry and detainer, ordering Speigel to vacate the property no later than November 14, 2021, and awarding a judgment of restitution in favor of Ianni.

{¶20} On November 18, 2021, Ianni's case was transferred to the same trial judge who was presiding over Speigel's case. On December 14, 2021, an order was issued consolidating the cases numbered A-2103981, A-2102982, and A-2103468.

{¶21} Ianni filed a motion for attorneys' fees, arguing that pursuant to Civ.R. 3(D)(2), he was entitled to fees incurred in transferring venue back to Hamilton County. The motion additionally argued that fees were warranted under R.C. 2323.51 for Speigel's frivolous conduct in delaying the proceedings by filing in Clermont County. Speigel filed a memorandum in opposition to the motion for fees.

{¶22} On December 14, 2021, the trial court issued an agreed order providing that, upon closing on a sale of the property, Ianni was to pay all costs, debts, taxes, and liens associated with the Fawnmeadow property and to place no less than $400,000 of the proceeds from the sale in escrow. It further provided that Speigel waived all claims against the title agency and potential buyers of the property, and that she was to file appropriate papers with the Hamilton County recorder to remove any cloud on the title of the Fawnmeadow property.

{¶23} On March 8, 2022, Speigel's counsel filed a motion to withdraw from representation, asserting that the attorney-client relationship had broken down. After

8

the motion was granted, Speigel retained new counsel who filed an amended complaint on her behalf. In Ianni's answer to the amended complaint, he disputed many of the allegations in Speigel's complaint concerning Moxie and the Vorhees and Fawnmeadow properties, and he asserted counterclaims for trespass, unjust enrichment, slander of title, quiet title, "trespass to chattels to personal property," conversion of personal property, and tortious interference with business relationships. Ianni also sought a declaratory judgment that the contract attached to Speigel's amended complaint is not a contract, does not bind him, and is unenforceable.

{¶24} Ianni subsequently moved for partial judgment on the pleadings on his counterclaims for quiet title and a declaratory judgment. The trial court issued an agreed order granting the motion for judgment on the pleadings. The order stated that Ianni is the sole record owner of the Vorhees property and that he may proceed with a sale of the property, and it set forth how proceeds from any sale were to be handled. The order additionally stated that Speigel would file the appropriate papers with the Hamilton County recorder to remove any cloud on the title of the property.

{¶25} After holding an evidentiary hearing on Ianni's motion for attorneys' fees, the trial court issued an entry awarding Ianni $44,226.68 in fees and costs. Speigel appealed that entry in the appeal numbered C-220467. Ianni moved to dismiss the appeal, arguing that the trial court's entry awarding fees was not a final appealable order. This court issued an entry stating that the finality of the order depended on the trial court's basis for granting the motion and awarding fees, and we remanded the case for the trial court to clarify the basis upon which the order for fees was made.

{¶26} While these appellate issues were being resolved, on September 28, 2022, Ianni filed a motion for partial judgment on the pleadings on Speigel's claim for

9

breach of the contract's operating-agreement provisions and on her claim asking for a declaratory judgment.

{¶27}   On October 5, 2022, Speigel's counsel filed a motion to withdraw based on Speigel's failure to comply with the terms of engagement that counsel had provided to her. On November 2, 2022, the trial court granted the motion to withdraw. The court's entry provided that "Speigel shall be on notice that she has until December 12, 2022, to obtain new counsel. On that date, this matter shall be set for a show cause hearing at 11:00 a.m. as to why the claims of Ms. Speigel shall not be dismissed for failure to prosecute, to see if Ms. Speigel has obtained new counsel, to hold the show cause hearing, and to consider any motions pending before this Court." The trial court contemporaneously issued a "notice of hearing to show cause." This notice stated in relevant part that:

> The Court hereby gives notice to Plaintiff that this action will be Dismissed Without Prejudice on December 12, 2022. Plaintiff has failed to maintain communication with her counsel. Plaintiff counsel's Motion to Withdraw as Counsel was GRANTED on October 26, 2022. Accordingly, the May 15, 2023 Jury Trial is VACATED and a HEARING TO SHOW CAUSE is scheduled for December 12, 2022 at 11:00 a.m. Plaintiff is required to appear for the Hearing to Show Cause and is encouraged to seek new counsel before the hearing date, if so desired.

{¶28}   On December 5, 2022, the trial court issued an amended order granting Ianni's motion for attorneys' fees. The order stated that fees were being awarded under both Civ.R. 3 and R.C. 2323.51. Speigel appealed from the trial court's amended entry in the appeal numbered C-230012. After the amended entry was filed in the original

10

appeal numbered C-220467, this court denied Ianni's motion to dismiss the appeal and ordered that the record be supplemented with any activity that occurred subsequent to the filing of the original notice of appeal.

**{¶29}** Back in the trial court, Speigel failed to attend the scheduled show-cause hearing on December 12, 2022. The trial court subsequently issued an entry granting Ianni's motion for judgment on the pleadings and dismissing Speigel's remaining claims on the merits. Speigel appealed from this entry in the appeal numbered C-230036. All three pending appeals have been consolidated.

## II. Transfer of Venue

**{¶30}** In her first assignment of error, Speigel argues that the Clermont County trial court erred in transferring her case to Hamilton County.

### A. Jurisdictional Analysis

**{¶31}** Before considering the merits of Speigel's argument, we address this court's jurisdiction to review the Clermont County court's order granting the change of venue. Pursuant to Article IV, Section 3(B)(2) of the Ohio Constitution, "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district."

**{¶32}** "[O]nce a court transfers a case to another venue in another county, the county to which the case was transferred assumes 'complete jurisdiction over the cause of action.'" *Rose v. Cochran*, 2d Dist. Montgomery No. 25498, 2013-Ohio-3755, ¶ 18, quoting *State ex rel. Starner v. DeHoff*, 18 Ohio St.3d 163, 165, 480 N.E.2d 449 (1985). As such, several of Ohio's appellate districts have held that "the appellate district of the transferee trial court is the proper forum for reviewing issues related to venue

11

transfer on appeal." *Id.* at ¶ 21 (holding that, where the action originated in the Ross County Court of Common Pleas, which is located in Ohio's Fourth Appellate District, but was transferred to the Montgomery County Court of Common Pleas in Ohio's Second Appellate District, the Second District was the proper forum to review the change of venue); *see Smith v. Inland Paperboard & Packaging, Inc.*, 11th Dist. Portage No. 2007-P-0088, 2008-Ohio-6984, ¶ 37 (where the original action was filed in the Cuyahoga County Court of Common Pleas in Ohio's Eighth Appellate District and venue was transferred to the Portage County Court of Common Pleas in the Eleventh Appellate District, the proper forum to review the change of venue was the Eleventh District); *Pasco v. McCoy*, 5th Dist. Stark No. 94-CA-0248, 1995 Ohio App. LEXIS 353, 2 (Jan. 30, 1995); *contra McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, ¶ 76 (holding that "when the original trial court orders a transfer of venue to a second trial court which lies within the territorial jurisdiction of a different appellate district, the venue determination can only be appealed to the appellate court which has superior jurisdiction over the original trial court").

{**¶33**}  Also impacting whether this court has jurisdiction to review an order granting a change of venue issued by a trial court outside of its territorial jurisdiction is Civ.R. 3(H). This rule provides "[n]o order, judgment, or decree shall be void or subject to collateral attack solely on the ground that there was improper venue; however, nothing here shall affect the right to appeal an error of court concerning venue." Civ.R. 3(H).

{**¶34**}  In *Jackson v. Friedlander*, 5th Dist. Stark No. 2016CA00053, 2016-Ohio-7503, the court discussed the effect of this rule on the right to appeal a judgment

granting a change of venue.[1] In *Jackson,* a cause of action originally filed in the Wayne County Court of Common Pleas, located in Ohio's Ninth Appellate District, was transferred to the Stark County Court of Common Pleas, located in Ohio's Fifth Appellate District. *Id*. at ¶ 3-4. In an appeal to the Fifth District, the only assignment of error raised was a challenge to the transfer of venue. *Id*. at ¶ 5-7. The court considered the impact of former Civ.R. 3(G) on the appeal, stating:

> Thus, while Civil Rule 3(G) provides a right of appeal with regards to venue, this right of appeal is limited by the first phrase of the rule that provides no judgment shall be void solely on the ground of improper venue. Pursuant to Civil Rule 3(G), if appellant had asserted other errors on appeal and this Court remanded the case to the trial court for further proceedings based upon those errors, this Court could also consider a challenge to venue and, on remand, sustain a challenge to venue and transfer the remanded case to the Wayne County Court of Common Pleas. Such a scenario would not violate Civil Rule 3(G), as the final judgment of the Stark County Common Pleas Court would not be voided solely on the issue of improper venue.

> However, that is not the case in this appeal as appellant does not appeal anything except venue. Thus, a reversal and remand by this Court of the jury's verdict with instructions to transfer the case to the Wayne County Common Pleas Court would constitute voiding the trial court's judgment entry solely on the ground of improper venue, in

---

[1] Civ.R. 3 was amended subsequent to *Jackson*. Civ.R. 3(G) discussed in *Jackson* has since been renumbered to Civ.R. 3(H). The provisions are identical.

> violation of Civil Rule 3(G), because there is nothing left to do upon remand except transfer the case to Wayne County for a re-trial. Such a reversal and remand would cause the final judgment by the Stark County jury and trial court to be void.

*Id.* at ¶ 12-13. The court ultimately concluded that former Civ.R. 3(G) prohibited the appeal. *Id.* at ¶ 15.

{¶35} Considering the case law discussed above and Civ.R. 3(H), we hold that the appellate district of the jurisdiction to which the case is transferred is the appropriate forum to review a challenge to the change of venue on appeal. To hold otherwise would result in a holding that runs afoul of Civ.R. 3(H), as the only issue that could be appealed to the appellate district of the original trial court would be a challenge to the change of venue. And pursuant to the plain language of Civ.R. 3(H), a judgment cannot be declared void solely on the ground of improper venue. Even if Civ.R. 3(H) did not present a roadblock, requiring venue to be challenged in the appellate district of the original trial court also results in a waste of judicial resources, as it would necessitate the filing of two appeals: one in the appellate district of the court rendering the final judgment in which all errors except for venue are raised, and another in the appellate district of the trial court that granted the change of venue.

{¶36} We accordingly hold that this court has jurisdiction to review the Clermont County trial court's order granting a change of venue.

### B. No Waiver of Challenge to Transfer of Venue

{¶37} Ianni argues that Speigel has waived this assignment of error by appearing before the trial court in Hamilton County after the transfer of venue and failing to request that the trial court reconsider venue, dismiss the action, or transfer

the case back to Clermont County. We are not persuaded by this argument. Where a party opposes a change of venue in the original forum, the matter is preserved for appeal. *Bruce v. Bruce*, 3d Dist. Marion No. 9-10-57, 2012-Ohio-45, ¶ 12. The party need not object again in the new venue in order to challenge the transfer of venue on appeal. *Id.*

**{¶38}** Having found that Speigel has not waived any challenge to the transfer of venue, we turn to the merits of her argument.

### C. No Error in Transfer of Venue

**{¶39}** We review an order granting a motion to transfer venue for an abuse of discretion. *Id.* at ¶ 13; *Rose*, 2d Dist. Montgomery No. 25498, 2013-Ohio-3755, at ¶ 23. "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Garry v. Borger*, 1st Dist. Hamilton No. C-220069, 2023-Ohio-905, ¶ 14, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

**{¶40}** Civ.R. 3(C) addresses where an action may be venued. As relevant to this appeal, it provides that proper venue lies in any county or counties that meet any of the following criteria:

(1) The county in which the defendant resides;

(2) The county in which the defendant has his or her principal place of business;

(3) A county in which the defendant conducted activity that gave rise to the claim for relief;

\* \* \*

15

(5) A county in which the property, or any part of the property, is situated if the subject of the action is real property or tangible personal property;

(6) The county in which all or part of the claim for relief arose[.]

**{¶41}** Ianni sought to transfer venue in this case based on an argument that Clermont County was an improper venue. Pursuant to Civ.R. 3(D)(1), a change of venue may be granted where an action has been commenced in an improper venue. Civ.R. 3(D)(1) provides that "[w]hen an action has been commenced in a county other than stated to be proper in division (C) of this rule, upon timely assertion of the defense of improper venue as provided in Civ.R. 12, the court shall transfer the action to a county stated to be proper in division (C) of this rule."

**{¶42}** Speigel contends that the Clermont County court based its decision to transfer venue on the "jurisdictional-priority rule" and its finding that Speigel filed the action in Clermont County before the dismissal in Hamilton County was officially docketed. "The jurisdictional-priority rule provides that '[a]s between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.' " *State ex rel. Davis v. Kennedy*, Slip Opinion No. 2023-Ohio-1593, ¶ 21, quoting *State ex rel. Phillips v. Polcar*, 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), syllabus. She accordingly contends that the trial court was limited to dismissing her complaint, rather than transferring it to another county. Had the trial court, in fact, relied on the jurisdictional-priority rule, Speigel is correct that the proper remedy would have been dismissal rather than transfer. *State ex rel. Otten v. Henderson*, 129 Ohio St.3d 453,

2011-Ohio-4082, 953 N.E.2d 809, ¶ 36; *Triton Servs., Inc. v. Reed*, 12th Dist. Warren Nos. CA2016-04-028 and CA2016-08-068, 2016-Ohio-7838, ¶ 9. But while the trial court may have considered the jurisdictional-priority rule, we cannot hold that it served as the basis for the trial court's decision. The trial court's entry was titled, "Entry granting motion for change of venue." Despite the court's misplaced focus on the "jurisdictional-priority rule," we hold that the actual action taken by the court was to grant Ianni's motion for a change of venue. We further hold that the Clermont County court did not abuse its discretion when it transferred venue to Hamilton County.

**{¶43}** Ianni resides in Hamilton County. *See* Civ.R. 3(C)(1). Moxie is located in Hamilton County. *See* Civ.R. 3(C)(2). Hamilton County is where Ianni allegedly breached the parties' contract and engaged in conduct that gave rise to the claims asserted in Speigel's complaint. *See* Civ.R. 3(C)(3). Both the Fawnmeadow and Voorhees properties are located in Hamilton County. *See* Civ.R. 3(C)(5). And Hamilton County is the county in which all or part of the claims arose. *See* Civ.R. 3(C)(6).

**{¶44}** Speigel contends that Clermont County was an appropriate venue because the parties' negotiated and executed the contract that served as the basis for many of the asserted claims in Clermont County. However, "[t]he place of the making of the contract between these two parties is irrelevant to the issue of where a cause of action arises for its breach; the controlling place is that of the breach." *Lorenz Equip. Co. v. Ultra Builders, Inc.*, 10th Dist. Franklin No. 92AP-1445, 1993 Ohio App. LEXIS 1183, 6 (Feb. 23, 1993), citing *Grange Mut. Cas. Co. v. Thompson*, 61 Ohio App.3d 190, 572 N.E.2d 237 (10th Dist.1990).

17

**{¶45}** Speigel further argues that venue was proper in Clermont County because the Pewter property was located in that county. We do not disagree. Despite the fact that this action has much stronger ties to Hamilton County, one of the properties at issue (the Pewter property) was located in Clermont County, which made that county a proper venue pursuant to Civ.R. 3(C)(5). Typically, if venue is appropriate in more than one county, the plaintiff elects the county in which to bring the action. *Lorenz Equip. Co.* at 5. However, a plaintiff's ability to elect the venue can be restricted where a plaintiff files suit in one jurisdiction, and then dismisses that suit and refiles in a different venue. *McGraw v. Convenient Food Mart*, 11th Dist. Lake No. 97-L-271, 1999 Ohio App. LEXIS 2818 (June 18, 1999), provides guidance on how to determine the proper venue under similar circumstances.

**{¶46}** In *McGraw*, the plaintiff slipped and fell at a convenience store. Plaintiff first filed a complaint related to the fall in Lake County, but voluntarily dismissed that complaint pursuant to Civ.R. 41(A). *Id.* at 1. Plaintiff refiled suit in Cuyahoga County, and defendants moved to transfer the venue back to Lake County. *Id.* at 2. The trial court granted the motion to transfer venue. *Id.* On appeal, the Eleventh District found no error in the transfer of venue, stating that "[p]ursuant to Civ.R. 3(B), venue might technically have been proper in Cuyahoga County. However, we cannot conclude that the Cuyahoga County Court of Common Pleas abused its discretion in transferring this matter to Lake County." *Id.* at 8. In so concluding, the court relied heavily on the fact that the plaintiff had been forum shopping by filing in Cuyahoga County. *Id.* at 10.

**{¶47}** The Clermont County court found that Speigel's "conduct in re-filing her action against the Defendants in this county is nothing less than abject forum shopping." As such, even though venue might technically have been proper in

Clermont County, we can find no abuse of discretion by the Clermont County court in transferring the matter back to Hamilton County. Speigel's first assignment of error is, accordingly, overruled.

### III. Attorneys' Fees

**{¶48}** In her second assignment of error, Speigel argues that the trial court abused its discretion in awarding $44,226.68 in attorneys' fees and costs against her "for a motion, a reply, and a non-evidentiary hearing and proceedings after the invalid transfer without determining a lodestar time, reasonable hourly rate, and application of Prof. Conduct R. 1.5(a)/DR 2-106(B) factors."

**{¶49}** The trial court awarded fees to Ianni under both Civ.R. 3(D) and R.C. 2323.51, Ohio's frivolous-conduct statute. Speigel does not challenge the trial court's finding that she engaged in frivolous conduct. Rather, her challenge concerns the amount of fees imposed. We review a trial court's award of fees under R.C. 2323.51 for an abuse of discretion. *Shertok v. Wallace Group Gen. Dentistry For Today, Inc.*, 1st Dist. Hamilton Nos. C-190457 and C-190464, 2020-Ohio-4369, ¶ 31; *State ex rel. Right to Life Action Coalition of Ohio v. Capital Care of Toledo*, LLC, 6th Dist. Lucas No. L-21-1177, 2022-Ohio-3266, ¶ 42. We likewise review an award of fees and costs under Civ.R. 3(D) for an abuse of discretion. *State ex rel. Right to Life Action Coalition of Ohio* at ¶ 49.

**{¶50}** R.C. 2323.51(B)(1) provides that any party adversely affected by frivolous conduct may file a motion for an award of reasonable attorneys' fees, court costs, and other reasonable expenses incurred. The award of fees under this statute shall not exceed the amount of attorneys' fees that were reasonably incurred. R.C. 2323.51(B)(3).

19

{¶51} Civ.R. 3(D)(2) allows for an award of attorneys' fees for successfully obtaining a change of venue, providing that "[w]hen an action is transferred to a county which is proper, the court may assess costs, including reasonable attorney fees, to the time of transfer against the party who commenced the action in a county other than stated to be proper in division (C) of this rule."

{¶52} After Speigel's case was transferred to Hamilton County, Ianni filed a motion for attorneys' fees incurred in the transfer of venue pursuant to R.C. 2323.51 and Civ.R. 3(D). After hearing argument from counsel on the motion, the court concluded that Ianni was entitled to fees because Speigel's purpose in dismissing her case in Hamilton County and refiling in Clermont County was to delay and to seek a different forum with the hope of obtaining a better outcome. The trial court then conducted an evidentiary hearing on the amount of fees to be awarded. At that hearing, the trial court directed the parties to focus on the time period between October 1, 2021, when the Clermont County action was filed and November 4, 2021, when the motion to transfer venue was granted.

{¶53} George Musekamp, a partner at Thompson Hine and the lead lawyer for Ianni in these cases, testified at the hearing. Musekamp stated that he has been practicing law for 12 years and is in charge of the firm's billing for services rendered to Ianni. Four exhibits were admitted into evidence during Musekamp's testimony, including a summary chart of the firm's hours expended in October, November, and December on the motion to transfer and the motion for attorneys' fees, as well as independent invoices for each of those months. The exhibits contained costs incurred and the time billed by Musekamp at an hourly rate of $480, Ben Sandlin at an hourly rate of $305, and Brianna Vollman at an hourly rate of $275. Musekamp told the court

that Sandlin has been a lawyer since 2019 and that Vollman was sworn in to practice law in the fall of 2022.[2]

{¶54} Musekamp testified that the rates billed by each attorney were reasonable for the services rendered. He explained that both his and Sandlin's practices involved business litigation and complex commercial litigation, while Vollman, who was "extremely junior," predominately engaged in research. Musekamp examined each monthly invoice in detail and explained the hours billed, noting that the invoices contained various redactions that the firm was not seeking compensation for because they pertained to matters not relevant to the parties' dispute.

{¶55} Musekamp testified that he was familiar with the factors contained in Prof.Cond.R. 1.5 concerning the reasonableness of hours billed. He discussed the factor pertaining to the novelty and difficulty of the question involved and stated that he has not previously handled a change-of-venue situation like the one in the case at bar, requiring his team to start from scratch in their research. He also discussed the factors pertaining to results obtained (the motion to transfer venue was granted), the time limitations imposed by the client or the circumstances (the case involved an emergency motion), and the fees customarily charged in the locality for similar legal services (Thompson Hine rate stacks up against the top tier firms in the city and their rates are what one would expect from attorneys of their experience).

---

[2] While Musekamp testified that Vollman was admitted to practice law in the fall of 2022, we note that the hearing at which he offered this testimony occurred in May of 2022. We do not presume to determine whether the court reporter incorrectly transcribed Musekamp's testimony or whether Musekamp incorrectly stated the date that Vollman was admitted to practice law, but according to the website of the Supreme Court of Ohio, Vollman was admitted to practice law in November of 2021.

{¶56} Musekamp was questioned on cross-examination about the time billed for researching and strategizing. He conceded that regardless of whether Speigel had dismissed the Hamilton County complaint, it would have been necessary for Ianni to file either a complaint or a counterclaim. But Musekamp contended that less work would have been necessary had the original complaint not been dismissed, because the time associated with drafting a counterclaim is much different than the time associated with drafting an original complaint. Musekamp was also questioned on the time billed for researching service-related issues. He explained that he had never seen a party dodge service like Speigel has in this case, and that such research would not have been necessary if he could have just filed a counterclaim in the original Hamilton County litigation. Musekamp was also questioned on time billed for preparing an answer to the Clermont County complaint. He conceded that no such answer was ever filed, but explained that they needed to have an answer ready, should the motion to transfer venue have been denied. Musekamp additionally discussed the hours billed for preparing a consolidation order, which he said became necessary after Ianni filed his own complaint in Hamilton County.

{¶57} In its amended order granting the motion for attorneys' fees, the trial court explained that it was awarding fees under R.C. 2323.51 and Civ.R. 3(D). It found that Speigel acted frivolously by engaging in "abject forum shopping" in Clermont County and stated that "her forum shopping is only exacerbated by her attempts to dodge service in an ejectment action Mr. Ianni filed after Ms. Speigel dismissed the original Hamilton County action." The court further found that Speigel's actions were intended to delay the proceedings and needlessly increased the costs of litigation. It concluded that "Mr. Ianni is entitled to recover his attorneys' fees and costs incurred

in defending against the action that Ms. Speigel filed in Clermont County, transferring the action to this Court, and seeking recovery of his attorneys' fees in this Motion pursuant to Civ.R. 3(D) and R.C. 2323.51." The court awarded fees and costs in the amount of $44,226.68. This was approximately $5,000 less than the amount of $49,322.08 requested by Ianni.

**{¶58}** Speigel contends that the trial court failed to calculate a lodestar and failed to consider the factors in Prof.Cond.R. 1.5 when awarding fees. The Ohio Supreme Court has recognized that the lodestar is the starting point for determining attorneys' fees. *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 10. The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*, quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). The court explained that "the factors in Prof.Cond.R. 1.5(a), including the results obtained, are subsumed within the lodestar; they do not enhance the lodestar." *Id.* at ¶ 17. "Although the trial court exercises broad discretion in applying the lodestar method, it must state the basis for the fee determination." *Calypso Asset Mgt., LLC v. 180 Indus., LLC*, 2019-Ohio-2, 127 N.E.3d 507, ¶ 29 (10th Dist). Absent "an explanation of the trial court's calculations and reasoning, an appellate court cannot meaningfully review the fee determination." *Id.*

**{¶59}** Ianni presented a lodestar to the court for the hours billed in October, November, and December. The trial court's order awarding fees referenced the exhibits that Ianni provided containing the lodestar as well as the briefing on the reasonableness of the fees. Although the trial court did not itself calculate a lodestar, it granted Ianni the amount requested, less approximately $5,000. It indisputably

23

would have been better practice for the trial court to have specifically stated that it had found the rates billed to be reasonable and that it accepted the lodestar provided by Ianni. Nonetheless, the trial court's order was sufficient to establish that the trial court found the rates charged to be reasonable and based its fees awarded on the lodestar.

{¶60}  *Shertok*, 1st Dist. Hamilton Nos. C-190457 and C-190464, 2020-Ohio-4369, is instructive in this situation. In *Shertok*, the appellant raised a similar argument that the trial court awarded attorney fees without using the lodestar method. *Id.* at ¶ 51. This court rejected Shertok's argument and affirmed the trial court's award of fees, relying on the trial court's recognition of the itemized invoices for legal services that had been submitted and its incorporation of those invoices and its own detailed notations on the invoices. *Id.* at ¶ 55. In the case at bar, based on the exhibits provided to and referenced by the trial court, we are able to review the trial court's award of fees and determine what the fees were based on. *See TCF Natl. Bank FBO Aeon Fin., LLC v. Cunningham*, 5th Dist. Stark No. 2009 CA 00159, 2010-Ohio-1032, ¶ 8-9 (reversing an award of fees because the trial court did not explain how it arrived at the amount awarded and the appellate court could not conduct a meaningful review of the award).

{¶61}  We further find no abuse of discretion in the trial court's determination that the rates charged were reasonable. Musekamp's testimony addressed the reasonableness of the rates and was sufficient for the trial court to have found that the rates charged were reasonable.

{¶62}  Speigel additionally—and correctly—argues that the trial court's award of fees included fees for work performed after the case was transferred. Included in the invoices submitted by Ianni were entries that were not directly related to the motion to transfer, occurring both before and after transfer.

**{¶63}** To the extent that the trial court awarded fees for these entries, we find no abuse of discretion. The award of fees was based in part on Speigel's frivolous conduct under R.C. 2323.51. It was not an abuse of discretion for the court to determine that Speigel's conduct resulted in the necessity of Ianni filing his own complaint in Hamilton County. At the time Ianni's complaint was filed, the motion to change venue had not been granted and there was no pending complaint filed by Speigel in Hamilton County to which Ianni could file counterclaims or crossclaims. It is worth noting that Ianni was not dilatory in failing to file an answer or counterclaims to Speigel's original complaint filed in Hamilton County prior to her dismissal of that complaint. The record establishes that Speigel's complaint was filed on August 24, 2021, and on September 7, 2021, the parties stipulated that Ianni had until October 22, 2021, to answer or otherwise plead. Speigel then dismissed the action on October 1, before any responsive pleading was filed by Ianni.

**{¶64}** Having no found no abuse of discretion by the trial court in its award of attorneys' fees, we overrule Speigel's second assignment of error.

## IV. Dismissal of Speigel's Claims

**{¶65}** In her third assignment of error, Speigel argues that the trial court erred in dismissing her claims against Ianni based on lack of counsel and without proper notice.

**{¶66}** Contrary to Speigel's assertions, the trial court did not dismiss her claims based on her failure to obtain counsel. Rather, the claims were dismissed for failure to prosecute. The trial court's entry dismissing Speigel's claims, which was issued after Speigel failed to attend the show-cause hearing that the court had

scheduled for the purpose of giving Speigel the opportunity to show cause why her claims should not be dismissed for failure to prosecute, stated:

> A hearing was held on December 12, 2022 on the Order to Show Cause after her prior counsel withdrew and notified the Court that Ms. Speigel was no longer communicating or participating in this action. Despite having six weeks to obtain new counsel, Ms. Speigel did not attend the hearing and the docket reflects no notice of appearance was filed on behalf of Ms. Speigel before the hearing. Ms. Speigel has had no contact with the Court or counsel for Mr. Ianni. Ms. Speigel did not file any memorandum with the Court explaining her failure to appear or intent to prosecute her claims. Ms. Speigel did not file a motion for a continuance. At the hearing, counsel for Defendants moved for dismissal on the merits for failure to prosecute and to dismiss Ms. Speigel's claims with prejudice because Ms. Speigel's actions, coupled with her prior actions to delay this action which are of record, were negligent, irresponsible, contumacious, and dilatory such that there are substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order. This Court agrees. Pursuant to Civ.R. 41(B)(3), unless otherwise noted in the dismissal, a dismissal for failure to prosecute is on the merits. Accordingly, the Court finds that Ms. Speigel has failed to prosecute her claims and has not shown cause, despite notice, to not dismiss her claims on the merits and with prejudice.

**{¶67}** We review a trial court's dismissal of a complaint for failure to prosecute for an abuse of discretion. *Jones v. Hartranft*, 78 Ohio St.3d 368, 371, 678 N.E.2d 530 (1997); *Brown v. Bowers*, 1st Dist. Hamilton No. C-070797, 2008-Ohio-4114, ¶ 44 (Painter, J., dissenting). This "standard is actually heightened when reviewing decisions that forever deny a plaintiff a review of a claim's merits." *Jones* at 372; *Brown* at ¶ 44.

**{¶68}** Civ.R. 41(B) provides that a court may, after notice to plaintiff's counsel, dismiss an action or claim where the plaintiff fails to prosecute. Relevant factors to be considered in a dismissal with prejudice are "the drawn-out history of the litigation, including a plaintiff's failure to respond to interrogatories until threatened with dismissal, and other evidence that a plaintiff is deliberately proceeding in dilatory fashion or has done so in a previously filed, and voluntarily dismissed, action." *Jones* at 372.

**{¶69}** Speigel contends that the trial court's dismissal was in error because she never received notice that the trial court granted her attorneys' motion to withdraw or of the court's entry scheduling a show-cause hearing. She further argues that she was not notified that her claims could be dismissed as a sanction. This latter argument is easily disposed of. The trial court's entry providing notice of the show-cause hearing stated that "The Court hereby gives notice to Plaintiff that this action will be Dismissed Without Prejudice on December 12, 2022." The contemporaneously issued entry granting counsels' motion to withdraw further stated that "this matter shall be set for a show cause hearing at 11:00 a.m. as to why the claims of Ms. Speigel shall not be dismissed for failure to prosecute." Assuming Speigel received these entries, they provided notice that her claims could potentially be dismissed for failure to prosecute.

27

**{¶70}** We now turn to Speigel's argument that the dismissal was in error because she never received service of the entries granting her counsels' motion to withdraw and scheduling a show-cause hearing. Pursuant to Civ.R. 5(B)(2)(c), "[a] document is served under this rule by * * * mailing it to the person's last known address by United States mail, in which event service is complete upon mailing." *See Lacy v. State*, 11th Dist. Ashtabula No. 2019-A-0091, 2020-Ohio-3089, ¶ 88. "A presumption of proper service exists when the record reflects that the civil rules pertaining to service of process have been followed." *Lacy* at ¶ 87. But this presumption "may be rebutted by sufficient evidence that service was not received." *Id.* at ¶ 90.

**{¶71}** The certificate of service on the notice of the show-cause hearing indicates that it was sent to Speigel at 88755 Fawnmeadow Lane. This is troubling for two reasons. First, Speigel was evicted from the Fawnmeadow property in November of 2021. Second, the actual address of the property is 8875 Fawnmeadow. Despite the service having an incorrect address and Speigel no longer living at that location, it was not returned as undelivered or unclaimed.

**{¶72}** The docket indicates that notice of the order granting the motion to withdraw was sent by ordinary mail to all parties required by law. Although Speigel's address on record with the Hamilton County Clerk of Courts is 8875 Fawnmeadow, the address listed for Speigel on her amended complaint in the case numbered A-2103981 is 892 Pine Valley Lane. While the record does not indicate to which address notice of this order was sent, the docket contains no return of service as undeliverable or unclaimed with respect to Speigel.

**{¶73}** The burden to update the court with her correct address laid with Speigel. "[A] 'party bears the burden of formally notifying the court of a change of address; the clerk is not charged with the duty of perusing the record to ensure that a party's mailing address has not changed.' " *State ex rel. Halder v. Fuerst*, 118 Ohio St.3d 142, 2008-Ohio-1968, 886 N.E.2d 849, ¶ 6, quoting *Robb v. Smallwood*, 165 Ohio App.3d 385, 2005-Ohio-5863, 846 N.E.2d 878, ¶ 11 (4th Dist.).

**{¶74}** Other than her assertion that she failed to receive service, Speigel has presented no evidence to rebut the presumption of proper service. *See Lacy*, 11th Dist. Ashtabula No. 2019-A-0091, 2020-Ohio-3089, at ¶ 90. And an unsworn statement is insufficient to rebut the aforementioned presumption. *Id*. at ¶ 95.

**{¶75}** While inarguably a harsh sanction, we cannot say that on this record dismissal was not warranted. Speigel's repeated efforts to delay these proceedings are well documented in the record. She dismissed the original action in Hamilton County only to attempt to forum shop in Clermont County. And as the trial court found in its entry awarding attorneys' fees, this forum shopping was exacerbated by her attempts to dodge service in Ianni's ejectment action. Further, counsel withdrew from representation of Speigel two times during the course of the litigation due to a breakdown in the attorney-client relationship. For all of the foregoing reasons, we find no abuse of discretion by the trial court in dismissing Speigel's claims for failure to prosecute. Speigel's third assignment of error is overruled.

## V. Conclusion

**{¶76}** Finding no error in the Clermont County trial court's transfer of venue, and no abuse of discretion in the Hamilton County trial court's award of attorneys' fees and dismissal of Speigel's claims, we affirm those judgments.

Judgments affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.